UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

CARLA DIAZ,

    Plaintiff,

v.

MIDLAND FUNDING, LLC,

    Defendant.

Civ. No. 17-1925 (KM/JBC)

OPINION

The Amended Complaint filed by plaintiff Carla Diaz in this removed case alleges defendant Midland Funding, LLC ("Midland") violated the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.* in two ways: *via* an unlawful demand for attorney's fees and an unauthorized disclosure of Diaz's Social Security number ("SSN"). Midland moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief may be granted (ECF no. 7), and for sanctions (ECF no. 8). For the reasons stated herein, the motion to dismiss is granted, but the motion for sanctions is denied.

### The Complaint

The allegations of the Amended Complaint assumed to be true for purposes of the motion to dismiss, may be summarized as follows:

Carla Diaz allegedly owed a past-due obligation on a Citibank/Sears credit card account. (AC ¶ 14 & Ex. A (Collection Cplt.))[1] Midland, a debt collector (AC ¶¶ 9-10), acquired the debt by assignment.

---

[1] For purposes of this opinion, citations to the record will hereinafter be abbreviated as follows:

- "AC" = Amended Complaint, ECF no. 4. "Complaint," as used in text, refers to this, the currently operative pleading.

On approximately December 18, 2015, Midland filed a collection action against Diaz in New Jersey Superior Court, Law Division, Special Civil Part, Bergen County. (AC ¶¶ 17–18 & Ex. A (Collection Cplt.)) The Collection Complaint asserted causes of action for breach of contract, unjust enrichment, and account stated. The prayer for relief reads as follows:

> **WHEREFORE**, Plaintiff demands judgment against Defendant in the sum of $1,196.05 together with costs and disbursements of this action, attorneys' fees, and such other further relief as this Court may deem just and proper.

(Collection Cplt., text following ¶ 19)

This language is alleged to be "materially false, deceptive, and misleading." Specifically, "it falsely states that Midland is legally and/or contractually allowed to charge attorney's fees." (AC ¶ 28) In fact, the Complaint alleges, the collection of attorney's fees is unlawful; in addition, Midland does not incur reimbursable attorney's fees when it uses in-house counsel. (AC ¶¶ 31, 32)

The Complaint next alleges that the Collection Complaint incompletely redacted Ms. Diaz's SSN. Specifically, it redacted the first five digits, thus publicly disclosing the final four digits of the SSN. (AC ¶¶ 34–36) This, alleges Diaz, violated N.J. Ct. R. 1:38-7(b) ("Confidential Personal Identifiers"), which requires that only three digits be revealed. (*See* AC ¶¶ 40–41)[2] More precisely, it seems that the body of the Collection Complaint permissibly disclosed only three digits of the SSN (*see* Collection Cplt. p. 1); an exhibit to the complaint, a

---

- "Collection Cplt." = Complaint in collection action against Diaz, filed on December 18, 2015, in New Jersey Superior Court, Law Division, Special Civil Part, Bergen County, ECF no. 4 at 11.
- "Def. Brf." = Brief in Support of Motion to Dismiss, ECF no. 7-1
- "Pl. Brf." = Plaintiff's Brief in Opposition to Motion to Dismiss, ECF no. 14
- "Reply Brf." = Reply Brief on Motion to Dismiss, ECF no. 17

2   It appears that the underlying Collection matter was settled. (*See* Def. Brf. 1) This action followed. There is no contention on this motion that this action is barred by the prior settlement.

printout of credit information, seems to be the source of the "four digit" allegation (Collection Cplt. Ex. A1, ECF no. 1-1 at 23). Because the entire SSN is masked by Diaz in her federal court submission, however, it is difficult to tell.

This action, originally filed in State court, was removed to federal court on March 23, 2017. (ECF no. 1) Earlier the same day, Diaz had amended her complaint to add allegations relating to incomplete redaction of her Social Security number. Diaz's Amended Complaint alleges a single cause of action under FDCPA, 15 U.S.C. §§ 1692e and 1692f, as well as various subsections thereunder. (AC ¶¶ 46–52) It seeks damages, attorney's fees, and costs.

**Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), the defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).[3]

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the

---

[3] A copy of the state-court Collection Complaint, with exhibits, is annexed to the Amended Complaint in this action as Exhibit A. A court may consider a "document integral to or explicitly relied upon in the complaint" without turning a motion to dismiss into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). *See also In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016). I therefore have considered the Collection Complaint, which is both cited in and integral to the claims of the Amended Complaint.

3

complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Housing Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

## Analysis

### A. FDCPA Claim Based on Prayer for Attorney's Fees

I first consider the claim that the Collection Complaint's prayer for attorney's fees violated the FDCPA.

To state a claim under the FDCPA, a plaintiff must allege that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005); *Johns v. Northland Grp., Inc.*, 76 F. Supp. 3d 590, 597 (E.D. Pa. 2014).

As for element 4—a violation of a provision of the FDCPA—the Complaint cites numerous sections and subsections. Most pertinent to the attorney's-fees allegation would be the following: 15 U.S.C. § 1692e (blanket prohibition on use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt."); *id.* § 1692e(10) ("The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."); *id.* § 1692f(1) (prohibiting "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law.").

The plaintiff stresses that in misleading-representation cases, courts routinely apply the "least sophisticated debtor" standard when "analyz[ing] the

4

communication giving rise to the FDCPA claim." *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)). The Third Circuit explained that standard in *Jensen v. Pressler & Pressler*:

> Although the least sophisticated debtor standard is "lower than the standard of a reasonable debtor," it "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir.2000)). In so doing, it "give[s] effect to the Act's intent to 'protect[ ] the gullible as well as the shrewd.'" *Campuzano–Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir.2008) (second alteration in original) (quoting *Brown*, 464 F.3d at 453).
>
> The standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be. *See Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir.2014) ("[T]he FDCPA does not require that a plaintiff actually be confused."); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993) ("We apply an objective test based on the understanding of the 'least sophisticated consumer' in determining whether a collection letter violates section 1692e."). Thus, "the FDCPA enlists the efforts of sophisticated consumers ... as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

791 F.3d 413, 418–19 (3d Cir. 2015). *See also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) ("[A]ny lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor.").[4]

The misleading or wrongful communication in the Collection Complaint is alleged to be this:

---

[4] Section 1692e contains an additional materiality requirement, but it does not add much; it "is simply a corollary of the well-established 'least sophisticated debtor' standard." *Jensen*, 791 F.3d at 418. "[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." *Id.* at 420–21.

5

> **WHEREFORE**, Plaintiff demands judgment against
> Defendant in the sum of $1,196.05 *together with costs and
> disbursements of this action, attorneys' fees,* and such other
> further relief as this Court may deem just and proper.

(Collection Cplt., text following ¶ 19; *italic* emphasis added.)

Midland persuasively contends that this cannot be regarded as "misleading" or as an attempt to collect amounts not "permitted by law." *See* 15 U.S.C. §§ 1692e, 1692f. This Collection Complaint was filed in New Jersey Superior Court, Special Civil Part.[5] In Special Civil Part, an award of fees is not only permitted, but *required*, as part of the taxation of costs in favor of a prevailing plaintiff:

> There shall be taxed by the clerk of the Superior Court, Law
> Division, Special Civil Part in the costs against the judgment
> debtor, a fee to the attorney of the prevailing party, of five per
> centum (5%) of the first five hundred dollars ($500.00) of the
> judgment, and two per centum (2%) of any excess thereof.

N.J. Stat. Ann. § 22A:2-42. *See also Chase Bank USA, N.A. v. Staffenberg*, 419 N.J. Super. 386, 398, 17 A.3d 239 (App. Div. 2010).

It is for this reason that courts in this District have dismissed similar FDCPA claims—in one case, brought by this very attorney against this very defendant. *See Garcia v. Midland Funding LLC*, No. 16-5248, 2017 WL 215971, at *1 (D.N.J. Jan. 7, 2017) (dismissing similar complaint against Midland) (Linares, J.); *Scioli v. Goldman & Warshaw P.C.*, 651 F. Supp. 2d 273, 279 (D.N.J. 2009) (dismissing similar claims) (Irenas, J.).[6] I agree with those holdings.

---

[5] The jurisdiction of Special Civil Part is limited to claims of $15,000 or less. N.J. Ct. R. 6:1-2(a)(1).

[6] Diaz would distinguish *Scioli* because it involved a contractual attorney's fees provision. If anything, that circumstance renders *Scioli* not a distinguishable case, but an *a fortiori* case. The plaintiff in *Scioli* claimed that FDCPA barred the debt collector from asserting a claim for statutory fees under N.J. Stat. Ann. § 22A:2-42 at all. He also argued that it was unlawful to seek both contractual attorney's fees and statutory fees under § 22A:2-42. *Scioli* held that "[defendant] may legally collect attorney's fees pursuant to *both* the Customer Agreement and N.J.S.A. 22A:2-42." 651 F. Supp. 2d at

6

The motion to dismiss the FDCPA claim, to the extent it is based on the prayer for attorney's fees in the Collection Action, is therefore granted.

### B.    FDCPA Claim Based on Incomplete Redaction of Diaz's SSN

I next consider Diaz's claim that Midland revealed four, rather than just three, digits of her Social Security number in the Collection Complaint, in violation of N.J. Ct. R. 1:38-7, and therefore violated the FDCPA.[7]

#### 1. State Rules of Court regarding redaction of SSNs

Some initial clarification of State law, to the extent it may be relevant to the plaintiff's FDCPA claim, is required. It is not correct to say, as Diaz does at one point, that "no digit of a social security number is allowed on complaints." (Pl. Brf. 22 n.2) State law prohibits any public display of "an individual's Social Security number, or any *four or more* consecutive numbers taken from the

---

279 (emphasis added) (citing *Bancredit, Inc. v. Bethea*, 65 N.J. Super. 538, 552, 168 A.2d 250, 258 (App. Div. 1961)). That being the case, a claim for both did not violate FDCPA.

Diaz argues that attorney's fees of in-house counsel are not permitted by law. (Pl. Brf. 19) For this proposition, she cites *Staffenberg, supra. Staffenberg* stands, if anything, for the contrary proposition. *See* 439 N.J. Super. at 412–13 ("[W]e sustain the trial court's conclusion that the provisions . . . barring the recovery by certain banks and lenders of fees for the services of their salaried, in-house attorneys, are inapplicable to the award of counsel fees as taxed costs in the Special Civil Part under N.J.S.A. 22A:2–42.")

Diaz also argues that fees are distinguishable from costs, and that therefore the demand for fees was unlawful. The statute, however, clearly authorizes attorney's fees as a component of taxed costs. N.J. Stat. Ann. § 22A:2–42 ("There shall be taxed by the clerk . . . in the costs against the judgment debtor, a fee to the attorney of the prevailing party").

7    The plaintiff has completely redacted *all* of the digits of Social Security numbers in the copies of the State court papers attached to her federal filings, although this is not required. *See* Fed. R. Civ. P. 5.2. No doubt she wished to avoid a concession that any disclosure is permitted, but this has made it difficult to analyze her claims about the defects in the state court filings. I gather from the briefs that the body of the state court Collection Complaint redacted all but three digits. The plaintiff's claim seems to arise from an exhibit to that complaint, a statement of account in which four numbers were left unredacted.

individual's Social Security number." N.J. Stat. Ann. § 56:8-164a(1), (4) (emphasis added).

The rules of general application in state courts are more specific. Court Rule 1:38-7 deals with "Confidential Personal Identifiers," defined as "a Social Security number, driver's license number, vehicle plate number, insurance policy number, active financial account number, or active credit card number." N.J. Ct. R. 1:38-7(a). A subsection of that Rule, 1:38-7(d), provides as follows:

> Any writ, order, or judgment issued by the court involving a judgment debtor or any application therefor may include the judgment debotr's names(s), address, date of birth, the last four digits of active financial account numbers, and the *last three digits of the individual's Social Security number.* No other personal identifiers shall be included.

N.J. Ct. R. 1:38-7(d) (emphasis added).[8] A violation of that Court Rule, N.J. Ct. R. 1:38-7(d), is the foundation of Diaz's claim here.

The Special Civil Part, where the Collection Complaint was filed, has a rule that is more specific still: Certain complaints are *required* to disclose the final three digits of the debtor's SSN. The Rules of that court require that "[t]he complaint in actions to collect assigned claims shall set forth with specificity . . . the last three digits of the defendant-debtor's Social Security Number." N.J. Ct. R. 6:3-2(c).[9]

---

[8] When the Collection Complaint was filed in December 2015, the Rule had recently been amended to require disclosure of three, not four, digits. *See* N.J. Ct. R. 1:38-7, Comment. ¶ 7 ("Paragraph (d) was amended effective May 2015 to require only the last three rather than the previous last four digits of social security numbers.").

[9] (c) Pleading Requirements in Actions on Assigned Claims. The complaint in actions to collect assigned claims shall set forth with specificity the name of the original creditor, the last four digits of the original account number of the debt, the last three digits of the defendant-debtor's Social Security Number (if known), the current owner of the debt, and the full chain of the assignment of the claim, if the action is not filed by the original creditor.

N.J. Ct. R. § 6:3-2(c). The evident intent is to avoid confusion about the identity of the creditor and debtor when the person suing did not have any direct dealings with the alleged debtor.

8

By way of comparison, the rule in the federal courts is that all but the last *four* digits of an SSN shall be redacted. See Fed. R. Civ. P. 5.2(a)(1).

### 2. Rule 1:38-7(d) violation as FDCPA unconscionable practice

Diaz's chief claim is that, by exposing four rather than three digits of her Social Security number in the Collection Complaint, in violation of N.J. Ct. R. 1:38-7(d), Midland committed an unlawful debt collection practice under FDCPA. To be sure, public disclosure of a confidential personal identifier, such as a Social Security number, is potentially harmful to an individual. There are any number of state and federal rules, including N.J. Ct. R. 1:38-7(d), that restrict such public disclosure. I am not persuaded, however, that such rules have much to do with unfair debt collection practices. See infra.

It is perhaps for that reason that there is little or no textual support for Diaz's claim in the FDCPA. Diaz's brief suggests that her claim is rooted in the FDCPA's concern with "invasion of privacy." See Pl. Brf. 21. The sections and cases she cites, however, are far more specific. Thus, 15 U.S.C. § 1692f ("unfair or unconscionable means" of collecting debt), is given specific content by 15 U.S.C. §1692f(8), which prohibits "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram . . . ." See also 15 U.S.C. § 1692f(7) (prohibiting communication with debtor "by post card").

In the context of that specific statutory prohibition, it is not controversial that FDCPA prohibits a debt collector from sending the debtor an envelope that would tend to reveal her debtor status. See Douglass v. Convergent Outsourcing, 765 F.3d 299, 303, 306 (3d Cir. 2014) (cited at Pl. Brf. 21). What allegedly occurred here, however, is not analogous to the facts of Douglass in any way that implicates the language or policy of FDCPA.

Douglass concerned a dunning letter that left visible the account number the debt collector had assigned to Douglass. It obviously fell within the literal prohibition of § 1692f(8), because the account number constituted information other than what is permitted (i.e., the return address of the debt collector). The

9

debt collector argued that this disclosure was nevertheless benign and not actionable. The Court of Appeals disagreed—not because the account number in some sense "identified" the recipient/debtor (the address on the letter did that)—but because it exposed her status *as* a debtor:

> Here, Convergent's disclosure implicates a core concern animating the FDCPA—the invasion of privacy. Section 1692(a) of the FDCPA explains that Congress enacted the law in response to "abundant evidence" of abusive debt collection practices that cause manifest harms to individuals, among them "invasions of individual privacy." 15 U.S.C. § 1692(a). The disclosure of Douglass's account number raises these privacy concerns. The account number is a core piece of information pertaining to Douglass's status as a debtor and Convergent's debt collection effort. Disclosed to the public, it could be used to expose her financial predicament. Because Convergent's disclosure implicates core privacy concerns, it cannot be deemed benign.

765 F.3d at 303–04. Anyone who knew Convergent was a debt collector and saw that it had assigned Douglass an account number could put two and two together.

FDCPA is assuredly a remedial statute, but its scope, however broad, must be understood in light of its remedial purpose. It is true, as plaintiff says, that privacy is a concern of the FDCPA. The FDCPA, however, is not an all-purpose privacy-protection statute. The "privacy" at issue concerns unlawful exposure of information *about the person's status as a debtor.* Section 1692f(8), and cases interpreting it, such as *Douglass,* rest on specific statutory language prohibiting the debt collector's public revelation that a person is being pursued by a debt collector. Such information is protected from disclosure because it would tend to publicly tar that person as a debtor, or, worse, a deadbeat. In the words of *Douglass,* the concerns of FDCPA are implicated because the collector's account number information is "capable of identifying [the plaintiff] as a debtor. . . . Disclosed to the public, it could be used to expose her financial predicament." 765 F.3d at 303–04.

10

The FDCPA's concern that a person's status as a debtor be shielded is unrelated to the violation of N.J. Ct. R. 1:38-7(d) alleged here. That State Rule of Court by definition does not come into play unless and until a debtor is sued on the underlying debt. By suing Ms. Diaz, Midland was alleging, in a public filing, that she owed consumer debt. That, of course, Midland was entitled to do. Such a complaint necessarily identifies the defendant by name as the alleged debtor. The *additional* disclosure of part of her Social Security number adds no information *with respect to the issue of consumer debt,* which is the concern of FDCPA. By disclosing part of Diaz's Social Security number, Midland was not (as in *Douglass*) affording some savvy reader the means to deduce her status as a debtor; Diaz's name, after all, is in the caption and in the body of the Collection Complaint. Moreover, her SSN (unlike a debt collector's account number) has no immediate association with, and reveals nothing about, her debts.

That analysis is confirmed by a review of the nature and purpose of N.J. Ct. R. 1:38. A violation of N.J. Ct. R. 1:38-7(d) is unlikely to equate to a violation of FDCPA, because that State Court rule was adopted for reasons having nothing to do with debt collection practices. Rule 1:38 was adopted in 2009 as part of a comprehensive overhaul of the New Jersey courts' treatment of public access to filed documents. The Special Committee that developed the Rule noted that, in pre-internet days, certain "personal identifiers" had languished in the "practical obscurity" of the clerk's office. Special Committee Report at ii.[10] Now, however, they are available to all:

> The use of unique numbers to identify a particular individual is a reality of modern life. . . . Identification is most reliable when several identifiers are associated with a particular individual.

---

[10] "Special Committee Report" means the Report of the Supreme Court Special Committee on Public Access to Court Records (Nov. 29, 2007), available at https://dspace.njstatelib.org/xmlui/bitstream/handle/10929/22093/c8662007a.pdf?sequence=1&isAllowed=y (last visited September 21, 2017)

> Court records that include at least some personal identifiers may be regarded as more useful and more likely to correctly identify a person or transaction. But there are risks in making personal identifiers available in court records. Identity fraud is a significant and growing concern to the public. Although the extent of identity fraud through the use of court records is unclear, *it is likely that the risk of identity fraud increases as more records with personal identifiers are made available* over the Internet.

Special Committee Report § 3.1 at 34–35 (emphasis added).

In short, this State Rule of Court is primarily intended as a safeguard against "identity theft"; it requires only partial redaction, however, because it must balance the concern with identity theft against the need to "correctly identify a person or transaction" in Court pleadings. *Id.* Nothing about the Rule, or its background, suggests that it was drafted to meet the concerns of the FDCPA and *Douglass* about embarrassing, pressuring, or misleading debtors. Indeed, it is difficult to see how incomplete redaction of a Social Security number relates to, promotes the collection of, or would reveal anything at all about, consumer debt. Disclosure of four digits of Diaz's SSN, even assuming it violated a court rule, did not violate FDCPA.[11]

---

[11] Whether Diaz's SSN was revealed, then, is not central to an FDCPA claim. At any rate, however, her claim that a redacted SSN reveals her personal information is exaggerated. That most people have *a* Social Security number assigned to them is common knowledge; the critical privacy issue concerns *which* number is assigned to whom. A Social Security number, then, is secure when issued not because it is locked in a vault, but because it is a needle in a haystack. So one way to conceptualize the issue of whether a redacted version "reveals" a person's SSN is to compare it to the odds of guessing.

Because a Social Security number comprises nine digits, there are theoretically one billion unique SSNs. (I simplify. Certain numbers are reserved for administrative and other reasons, and the now-superseded system of using the first three digits to signify a geographical region would restrict the availability of certain numbers for any particular individual. *See* The SSN Numbering Scheme, https://www.ssa.gov/history/ssn/geocard.html; Social Security Number Randomization, https://www.ssa.gov/employer/randomization.html; Invalid Social Security Numbers (SSNs), https://secure.ssa.gov/apps10/poms.nsf/lnx/0110201035 (all three pages on the Social Security Administration website last visited Sept. 21, 2017).)

N.J. Ct. R. 1:38-7(d) itself does not provide a private right of action. It would be anomalous to hold that FDCPA makes a violation of this State Court Rule actionable, where the State itself has not done so. Nor is FDCPA properly viewed as the kind of statute that grafts a federal cause of action onto state-law violations. FDCPA describes the conduct it prohibits in numerous sections and subsections. See 15 U.S.C. §§ 1692e, 1692f. It is not an incorporation-by-reference statute that grants a right of action for violations of other provisions. See *Qureshi v. OPS 9, LLC*, 2015 WL 6407883 (D.N.J. Oct. 21, 2015) (holding that "fail[ure] to comply with New Jersey law and New Jersey Court Rules" does not establish a violation of FDCPA; allegations must independently satisfy the elements of an FDCPA claim); *Skinner v. Asset Acceptance, LLC*, 876 F. Supp. 2d 473, 479 (D.N.J. 2012) (dismissing FDCPA claim and stating that "[t]hough Defendant's attempt to collect a debt in New Jersey without filing the required bond may have been contrary to New Jersey law, Defendant's challenged

---

It follows that there is roughly a 1 in one billion chance of randomly guessing anyone's SSN. Here, however, the reader has more information: he or she knows three, or four, of the digits in the SSN. There are 100,000 unique SSNs in the format xxx-xx-[four identified digits], and ten times as many, or 1 million, in the format xxx-xx-x[three identified digits]. Thus redaction of the first five or six digits decreases the odds against guessing, but they remain formidable; either option leaves the individual's SSN quite private, while helping to ensure that the correct defendant has been named.

Of course, additional facts may contribute to a mosaic of information that would assist in associating a particular SSN with an individual. Court redaction rules cannot alone solve the problem of identity theft, although they can help. Redaction is not a foolproof method of security, and I suppose it does not really need to be; the goal may be simply to make guessing so burdensome that it is uneconomical when compared to other methods of obtaining SSNs. A court could wash its hands of the problem by requiring redaction of all nine digits of SSNs. Redaction rules, however, must strike a balance with the requirements that allegations be specific, that the defendant be correctly and uniquely identified, and that the public have access to court records. See p.11 and n.10, supra; see generally Kristin M. Makar, Comment, *Taming Technology in the Context of the Public Access Doctrine: New Jersey's Amended Rule 1:38*, 41 Seton Hall L. Rev. 1071 (2011). The New Jersey Supreme Court, in adopting this Rule, could reasonably have thought that keeping the odds at 1:100,000 or 1:1,000,000 was a legitimate security compromise.

I caution again, however, that I am not describing the actual process of identity theft; I use "guessing" only as a means of conceptualizing the harm of incomplete redaction.

conduct must also stand as a violation of the FDCPA in order for Plaintiff to maintain her claim. The state law violation itself is not a per se violation of the FDCPA.")

For all of these reasons, I am loath to conclude that a violation of N.J. Ct. R. 1:38-7(d) should be deemed an unfair debt collection practice, actionable as such under FDCPA.

Can we nevertheless conclude that revealing a redacted SSN falls within FDCPA's more general prohibition of unconscionable practices? I am skeptical. That "unconscionable" practice is required by State rule, to the extent of three digits. And it is permitted by federal practice, to the extent of four digits. If plaintiff's theory is correct, then every federal complaint (or at least every federal complaint that bears a relation to debt collection), by virtue of its compliance with Fed. R. Civ. P. 5.2, potentially violates FDCPA.

The critical point, however, is that even disclosure of an entire SSN in a civil complaint would bear no direct or obvious relation to deceptive statements or unconscionable methods in connection with collecting a consumer debt. It may violate some rule, but it is well removed from anything proscribed by the FDCPA.

The motion to dismiss the FDCPA claim, to the extent it is based on incomplete redaction of the SSN in the Collection Complaint, is therefore granted.

### C. Sanctions/Statute of Limitations

Midland seeks not only dismissal of the Complaint, but the imposition of Rule 11 sanctions against plaintiff's counsel for having filed it in the first place. (ECF no. 8) This sanctions motion is intertwined with Midland's claim in its motion to dismiss that the FDCPA claim is partially barred by the statute of limitations. Because I have already dismissed the complaint on the merits, the statute of limitations point is moot, but I discuss it briefly in connection with the sanctions motion.

For purposes of Midland's argument it is important to distinguish the two components of the FDCPA claim, which I will call the "attorney's fees

component" and the "SSN component." Midland's statute of limitations argument is confined to the SSN component only. That SSN component was first asserted in an amended complaint filed beyond the limitations period. Midland argues that it does not relate back to the filing date of the original complaint, and therefore is untimely.

Diaz's FDCPA claim arises from statements in the Collection Complaint, which was filed in Special Civil Part on December 18, 2015. An FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d).

The time line is as follows:

| | |
|---|---|
| 12/18/2015 | State court Collection Complaint filed, triggering one-year FDCPA limitations period.[12] |
| 12/19/2016 | Expiration of FDCPA limitations period. Complaint in this FDCPA action timely filed in State court.[13] It contains the attorney's fees component only. |
| 3/23/2017 | Complaint amended to add the SSN component of the FDCPA, and |
| | Notice of removal to federal court.[14] |

The one year limitations period, then, had expired as of March 23, 2017, when Diaz amended her complaint to add the SSN component of her FDCPA claim. Unless that SSN claim relates back to the date of filing of the original complaint, then, it would be untimely.

---

[12] *See Glover v. F.D.I.C.*, 698 F.3d 139, 149–50 (3d Cir. 2012) (FDCPA limitations period runs from date of allegedly false representation).

[13] The one-year statutory period expired on December 18, 2016, a Sunday. It is presumably for this reason that Midland does not claim that the filing of the original complaint on Monday, December 19, 2016, was untimely.

[14] Diaz actually amended her complaint in State court. Midland filed its notice of removal before being notified that the complaint had been amended a few hours previously, so the notice attached the original complaint. (ECF no. 1-1) On March 31, 2017, Midland substituted a copy of the Amended Complaint as Exhibit A to its notice of removal. (ECF no. 4)

15

Rule 11 provides that by filing a pleading, counsel is deemed to certify that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)( & (c).[15] Midland urges that Rule 11 sanctions are appropriate because Diaz, in her Amended Complaint, asserted a new claim (*i.e.*, the SSN component of the FDCPA claim) that was "clearly precluded by the statute of limitations." (Def. Sanctions Brf. 5 (ECF no. 8-3), quoting *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1091 (3d Cir. 1988)). The statute of limitations, however, is an affirmative defense; sanctions aside, even to merit Rule 12(b)(6) dismissal, the complaint's failure must be clear on its face.[16] *Napier*, for example, was an appeal from a motion to dismiss, but there, the plaintiff was bringing his third lawsuit based on the same grievance, which had occurred 40 years previously, during World War II.

An amendment to a complaint will relate back to the date of filing of the original complaint where, *inter alia*, "[t]he amendment asserts a claim or defense that arose out of the conduction, transaction, or occurrence set out—or

---

[15] Diaz both filed and amended her Complaint in state court, where Rule 11 does not apply. There, however, the complaint was subject to N.J. Ct. R. 1:4-8(a) ("Effect of Signing, Filing or Advocating a Paper"), which is in many respects similar to Rule 11.

[16] The limitations defense is commonly unsuitable for consideration on a Rule 12(b)(6) motion:

> "Since the applicability of the statute of limitations usually involves questions of fact for the jury," *Van Buskirk v. Carey Can. Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir. 1985), "if the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)[,]" *Schmidt*, 770 F.3d at 249 (internal quotation marks, brackets, and citation omitted).

*Fried v. JP Morgan Chase & Co.*, 850 F.3d 590, 604 (3d Cir. 2017). Midland's insistence that the plaintiff has not met her "burden" is therefore premature.

attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).[17] Both the attorney's fees component and the SSN component arose from the wording of the same Collection Complaint, albeit from different portions of that complaint. They are, moreover, components of the same FDCPA claim.

The relation-back issue is not so clear that a reasonable lawyer should have known better than to amend the complaint to include the SSN component. The motion for Rule 11 sanctions is therefore denied.

## CONCLUSION

For the reasons expressed above, the defendant's motion to dismiss the complaint (ECF no. 7) is GRANTED. The motion for sanctions (ECF no. 8), however, is DENIED. An appropriate order accompanies this Opinion.

Dated: September 22, 2017

KEVIN MCNULTY
United States District Judge

---

[17] Again, the amendment actually took place in State court. The relation back rule there, however, is similar to the federal rule. See N.J. Ct. R. 4:9-3 (relation back where new claim "arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading").

17